UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

CMC Telecom, Inc.,                              Case No. 07-56001-MBM
                                                          Chapter 11
                                 Debtor.    /           Hon. Marci B. McIvor

West Branch-Rose City Area Schools,

           Plaintiff,

vs.                                                                       Adv. Pro. No. 07-6286

CMC Telecom, Inc.,

           Defendant.         /

**OPINION AND ORDER DENYING WEST BRANCH-ROSE CITY
AREA SCHOOL DISTRICT'S REQUEST FOR PRELIMINARY
INJUNCTION, APPLICATION FOR IMMEDIATE TEMPORARY
RESTRAINING ORDER AND RETURN OF PROPERTY**

On August 23, 2007, West Branch-Rose City Area School District ("District") filed a "Motion for Preliminary Injunction, Application for Immediate Temporary Restraining Order and Return of Property" ("Motion"). In its Motion, the District argued that the debtor, CMC Telecom, Inc. ("CMC") is holding funds in the amount of $23,410.50 which are not property of the bankruptcy estate. The District's Motion requested that the Court either order the Debtor to immediately return the money to the District, or order the Debtor to segregate funds in that amount. The Debtor argued that there are no grounds for injunctive relief as neither the Bankruptcy Code nor the case law authorize the type of relief sought by the District

The Court scheduled an expedited hearing on the District's Motion for August 28, 2007. At the conclusion of the hearing, the Court denied the Motion on the grounds that pursuant to Fed. R. Bankr. P. 7001(7), requests for injunctive relief must be made through the filing of an adversary proceeding. The Court indicated that once an adversary complaint was filed, the Court would promptly review the Complaint to determine whether, as a matter of law, the School District is entitled to injunctive relief and whether an evidentiary hearing should be scheduled.

On August 28, 2007, the School District filed an adversary complaint against Debtor. The Complaint restates the allegations contained in its Motion for Preliminary Injunction– that Debtor is holding funds that belong to the School District and are not property of the bankruptcy estate. The Complaint seeks immediate return of the funds.

Having reviewed the record and the relevant case law, the Court finds that the School District is not entitled to injunctive relief. However, the court also finds that it is in the best interest of the parties to resolve the issue raised by the complaint as expeditiously as possible. Therefore, the court will hold a scheduling conference to set dates for filing briefs and dispositive motions on Tuesday, October 2, 2007 at 2:00 p.m.

<u>Background</u>

Debtor CMC Telecom, Inc. is a service provider under the Universal Service Fund Program established under the Telecommunications Act of 1996. Movant West-Branch-Rose City Area School District utilized Debtor as its service provider. Because the funds at issue involve money paid out of the Universal Service Fund ("USF"), a brief summary of the Telecommunications Act of 1996 and the USF is necessary in

2

order to understand the parties' dealings and the nature of the payment in dispute.

Congress passed the "1996 Telecommunications Act . . . to encourage universal telecommunications service." *City of Springfield v. Ostrander (In re LAN Tamers, Inc.)*, 329 F.2d 204, 206 (1st Cir. 2003). "Universal service includes 'advanced telecommunications and information services' particularly high-speed internet access, for schools (as well as for libraries and rural health care providers)". *Id.* (quoting 47 U.S.C. 254(b)(6), (h)(1)(2000)). To this end, the Telecommunications Act of 1996 requires telecommunications carriers providing interstate telecommunications services to financially support the cost of providing telecommunications services to schools, libraries, health-care providers, low-income consumers, and subscribers in high-cost areas. *See* 47 U.S.C. §§ 254(b), (d)(2001). Each telecommunications carrier is required by law to contribute to the USF based on its interstate and international telecommunications revenue. *See* 47 C.F.R. § 54.709(a)(2005). The Federal Communications Commission devises a formula that each carrier must adhere to in calculating its contribution. The USF contributions are not defined as federal funds; however, they exist because of a federal mandate. *In re LAN Tamers, Inc.*, 329 F.3d at 206. *See also Tex. Office of Publ. Util. Counsel v. FCC*, 183 F.3d 393, 405-409 (5th Cir. 1999)(summarizing the history and universal service goal of the Telecommunications Act and its regulations). The telecommunications companies pass this cost through to their subscribers; the charge generally appears on phone bills as the "Universal Service Fund Fee."

The USF is disbursed to subsidize the costs of telecommunications services for

3

the beneficiaries of the act through the Universal Service Administrative Company ("USAC"), a private non-profit corporation. To receive funds, a beneficiary (in the present case the School District) enters directly into a contract with a service provider to supply eligible services. 47 C.F.R. § 54.504( c). Service providers must be registered with USAC. The amount of funding a school district receives from the USF depends on the area's poverty level. It ranges between 20% and 90% of the cost of eligible projects. 47 C.F.R. § 54.505.

There are two ways a school district may be paid : (1) USAC and a school may disburse their respective shares of the cost directly to the services provider, or (2) a "Billed Entity Applicant Reimbursement" or "BEAR". 47 C.F.R. § 54.514. Under BEAR, the school (the "billed entity applicant") pays the full cost to a service provider up front, receives a funding commitment letter from USAC for the fund's share of the cost, and then submits a form to USAC to receive reimbursement. USAC lacks the authority to pay a school district directly, because the telecom act and its regulations allow payments from the USF only to service providers. 47 U.S.C. § 254(e).[1] A service provider who has been paid in full by a beneficiary must receive the funds under the BEAR method and pass them through to the school.

---

[1]That section provides:
After the date on which Commission regulations implementing this section take effect, only an eligible telecommunications carrier designated under section 214(e) of this title shall be eligible to receive specific Federal universal service support. A carrier that receives such support shall use that support only for the provision, maintenance, and upgrading of facilities and services for which the support is intended. Any such support should be explicit and sufficient to achieve the purposes of this section. 47 U.S.C. § 254.

The case at bar involves payment to the School District under BEAR. The School District became a customer of debtor CMC in January, 2003. In a letter dated April 27, 2007, USAC informed Debtor that it had approved a reimbursement payment of $23,410.50 to the School District –"reimbursement of the discounted portion of bills already paid in full to you since the effective date of the discount." (School District's Motion for Preliminary Injunction, Attachment A). The letter further stated:

> Pursuant to the Service Provider Acknowledgment page of the Form 472 which you signed, you must remit to the applicant the amount shown as 'Total Amount of Reimbursement Approved for Payment' above, no later than 10 calendar days after receipt of payment of the approved discounts from USAC. You also agreed not to tender or make use of the payment of the approved discounts issued by USAC to you prior to remitting the discount to the applicant.
>
> The USAC check should be mailed to the service provider named above within 20 calendar days of the date of this letter.
>
> To reimburse the 'Total Amount of Reimbursement Approved for Payment," to the applicant, the service provider may (1) issue a check or (2) issue a credit to the applicant. The decision as to which form the reimbursement should take should be a mutual one between the service provider and the applicant.

The "Service Provider Acknowledgment" referred to in USAC's letter was signed by a representative of Debtor on April 4, 2007, and states, in its entirety:

> I certify that I am authorized to submit this Service Provider Acknowledgment for this Billed Entity Applicant Reimbursement Form, and acknowledge to the best of my knowledge, information and belief, as follows:
>
> A. The service provider must remit the discount amount authorized by the fund administrator to the Billed Entity Applicant who prepared and submitted this Billed Entity Applicant Reimbursement Form as soon as possible after the fund administrator's notification to the service provider of the amount of the approved discounts on this Billed Entity Applicant

5

07-06286-mbm    Doc 6    Filed 09/14/07    Entered 09/14/07 11:41:37    Page 5 of 9

Reimbursement Form, but in no event later than 20 business days after receipt of the reimbursement payment from the fund administrator, subject to the restriction set forth in B. below.

B. The service provider must remit payment of the approved discount amount to the Billed Entity Applicant prior to tendering or making use of the payment issued by the Universal Service Administrative Company to the service provider of the approved discounts for the Billed Entity Applicant Reimbursement Form.

Debtor received the funds from USAC, but did not remit the funds to the School District. On August 15, 2007, Debtor filed a voluntary Chapter 11 bankruptcy petition.

According to Debtor, "[i]n the spring of 2006, CMC discovered that it had charged the District for certain services at rates below those provided for in the contract. Accordingly, CMC reconciled the under-billing and issued its charges for the deficiency amount of approximately $65,000." (Debtor's Brief in Opposition to Motion for Preliminary Injunction at 1). The School District contends that it never received an itemized bill explaining the specific nature of the $65,000 charge and that there is no basis for an offset. The School District terminated its service contract with Debtor in the fall of 2006. (Debtor's Brief at 1).

In its Complaint and the Motion seeking injunctive relief, the School District states that while Debtor has possession of the funds, it has no equitable interest in the money. Debtor is simply a conduit for payment from USAC to the District– a conduit expressly created by federal statute. Because Debtor has no equitable claim to the money, the money is not part of the estate and should thus be paid directly to the District. Debtor contends that because the money was paid to it without any restrictive endorsement, the money belongs to Debtor and is part of the estate. Moreover, Debtor

6

asserts that the District owes it an amount in excess of the $23,410.50, and Debtor is entitled to offset the USF money against that debt.

Standard for Injunctive Relief

The purpose of a preliminary injunction is "to maintain the status quo pending a determination of an action on its merits." *Blaylock v. Checker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976). In determining whether to issue an injunction, a bankruptcy court must consider four factors:

1.  whether the movant has shown a strong or substantial likelihood of success on the merits;

2.  whether the movant has demonstrated irreparable injury;

3.  whether the issuance of an injunction would cause substantial harm to others; and

4.  whether the public interest is served by the issuance of an injunction.

*American Imaging Services, Inc. v. Eagle-Picher Industries, Inc. (In re Eagle-Picher Industries, Inc.*, 963 F.2d 855, 859 (6th Cir. 1992) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)). The factors should balanced. *DeLorean*, 755 F.2d at 1229.

The court is required to make specific findings with respect to each of the four factors, unless fewer factors are dispositive of the issue. *DeLorean*, 755 F.2d at 1228. Where the three factors other than the likelihood of success all strongly favor issuing the injunction, a court is within its discretion in issuing a preliminary injunction if the merits present a sufficiently serious question to justify a further investigation. *Id.* at 1230. Alternatively, the court may also issue a preliminary injunction if the movant

"shows serious questions going to the merits <u>and</u> irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Friendship Materials Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). As a general rule, where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts will refuse to find the harm irreparable. *DeBeers Consol. Mines Ltd. V. United States*, 325 U.S. 212, 219-220 (1945); *Basicomputer Corp. V. Scott*, 873 F.2d 507, 511 (6th Cir. 1992). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Board of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

If factual disputes exist with regard to these four factors, the court must hold an evidentiary hearing; if no factual disputes exist, the court may make its decision based on affidavits and depositions. *American Imaging*, 963 F.2d at 858-59.

After reviewing the Complaint, as well as the brief and exhibits submitted by the parties, the Court finds that a preliminary injunction requiring the immediate return of funds to the School District is not warranted. While the District may well prevail on the merits of the case (*See City of Springfield v. Ostrander (In re LAN Tamers, Inc.*, 329 F.3d 204 (1st Cir. 2003); *In re West Central Housing Development Org.*, 338 B.R. 483 (Bankr. D. Colo. 2005)), denial of injunctive relief in the form of an immediate return of funds to the school district, will not result in irreparable harm to the School District.

As noted above, preliminary injunctions are not generally appropriate where the damages sought are monetary. The School District's concern regarding its ability to recover the funds it believes it is owed is understandable, particularly in the context of

8

07-06286-mbm    Doc 6    Filed 09/14/07    Entered 09/14/07 11:41:37    Page 8 of 9

Debtor's bankruptcy filing. However, Debtor's reorganization is monitored by the Court, the U.S. Trustee, and other creditors. After fully hearing the merits of the School District's allegations regarding the nature of the funds retained by Debtor, the Court may conclude that the School District has a claim to the funds that is superior to the claims of other unsecured creditors, or that the funds do not belong to the estate. Either way, Debtor's ability to repay the funds to the District is not substantially altered by the short passage of time required to fully litigate this matter.

The purpose of a chapter 11 bankruptcy is to give a failing business a breathing spell while it attempts to work out its financial problems. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198 (2003). This purpose is not furthered by requiring an immediate return of funds in the absence of irreparable injury to Plaintiff.

## Conclusion

For the foregoing reasons, West Branch-Rose City Area School District is not entitled to injunctive relief. The School District's Complaint will proceed as an adversary proceeding seeking turnover of funds. A scheduling conference will be held on October 2, 2007 at 2:00 p.m.

**Signed on September 14, 2007**

                                                        **/s/ Marci B. McIvor**
                                               **Marci B. McIvor**
                                               **United States Bankruptcy Judge**